IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENE J. FRAGAPANE, )<br>)<br>    Plaintiff, )<br>)<br>)<br>  v. )<br>)<br>)<br>JAMIE SMITH, ERIC KONINGSBURG )<br>and the UNITED STATES ROTTWEILER )<br>CLUB, )<br>    Defendants. ) | 2:05-cv-1775 |

## MEMORANDUM OPINION AND ORDER OF COURT

    Before the Court for consideration and disposition is Plaintiff's MOTION FOR RECONSIDERATION (*Document No. 11*). In support of the Motion, Plaintiff has filed two Affidavits and a variety of exhibits (*Document Nos. 14, 17-20*). In response thereto, Defendants Erika Butler, Andreas Mueller and Michael Lecuyer have filed their SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) (*Document No. 22*).

Background

    On December 24, 2005, Plaintiff Gene J. Fragapane ("Plaintiff"), a Rottweiler breeder, filed a Civil Complaint based upon diversity of citizenship jurisdiction against Defendants Erika Butler ("Butler"), Andreas Mueller ("Mueller"), Michael Lecuyer ("Lecuyer"), Jamie Smith ("Smith"), Eric Koningsburg ("Koningsburg") and the United States Rottweiler Club ("USRC"). Count I alleges that Butler, Mueller and the USRC are liable for Interference with a Prospective Business Contract because they intentionally delayed the issuance of a USRC registration certificate for Igor vom Goldfuchs ("Igor"), one of Plaintiff's Rottweilers. Due to the delay, Plaintiff allegedly was unable to sell Igor to a prospective buyer in Germany, and also lost future stud breeding fees. Complaint at ¶¶ 42-45. Count II alleges that all defendants are liable for Civil Conspiracy to Damage Prospective Business Contracts and Relationships. The gravamen of Count II is that the defendants committed a variety of acts

in furtherance of a conspiracy to adversely affect Plaintiff's dog breeding business.  For example, Plaintiff alleges that Butler and Mueller caused an incorrect (and lower grade) registration certificate to be issued for Igor, thereby lowering his value; that Butler, Mueller, Lecuyer and Koningsburg conspired to have his dogs judged unfairly at dog shows, thereby lowering their value, and that Smith and Lecuyer posted derogatory and libelous comments about him on online bulletin boards or websites, which comments "were calculated to cause the loss of Plaintiff's reputation in the rottweiler (*sic*) breeding community."  Complaint at ¶ 54.

According to the Complaint, Butler, Mueller and Lecuyer are residents of Washington, Arizona and California, respectively.  Complaint at ¶¶ 2-4.  These defendants filed a Motion to Dismiss Pursuant to Rule 12(b)(2), with brief in support (*Document Nos. 3 &4*), contending that the Court could not exercise *in personam* jurisdiction over them.  Plaintiff filed a response and a brief in opposition thereto (*Document Nos. 7 & 8*), but failed to submit any evidence to satisfy his burden of proof.

The Court granted the Motion to Dismiss.  Order of Court, Document No. 10. Plaintiff filed the instant Motion for Reconsideration in which he argued that his averments were sufficient to establish *in personam* jurisdiction.  At Plaintiff's request, on April 6, 2006 the Court heard oral arguments on the Motion for Reconsideration.  During the arguments the Court explained to Plaintiff's counsel that he must establish jurisdictional facts *through the submission of evidence*.  The Court also afforded Plaintiff ten (10) days within which to submit evidence to establish jurisdictional facts regarding Butler, Mueller and Lecuyer.  Order of Court, Document No. 15.  As mentioned above, Plaintiff has now submitted two Affidavits and a variety of exhibits in support of his Motion for Reconsideration and arguments for *in personam* jurisdiction.  Butler, Mueller and Lecuyer have submitted no contradictory evidence, and instead have maintained that Plaintiff's evidence is inadequate.  The Court must now decide whether Plaintiff's evidence is sufficient to support *in personam* jurisdiction over Butler, Mueller and Lecuyer.

## Standard of Review

When personal jurisdiction is challenged by a defendant, the plaintiff "must come forward with sufficient facts to establish that jurisdiction is proper." *Mellon Bank (East) PSFS, Nat. Ass'n. v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (*citing Carteret Savings Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir.), *cert. denied*, 506 U.S. 817 (1992)). A plaintiff may not rely on the pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Whether a Court may exercise personal jurisdiction over a defendant is "inherently a matter which requires resolution of factual issues outside the pleadings." *Id.*

"[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Where the facts alleged to support jurisdiction are challenged by the defendant, "plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club, supra*, 735 F.2d at 67 n.9.

A federal district court "may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits." *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993) (*citing* Fed.R.Civ.P. 4(e)). The United States Court of Appeals for the Third Circuit has provided the following guidance with respect to the relationship between state and federal law:

> In brief, to exercise personal jurisdiction over a defendant, a federal court ... must undertake a two-step inquiry. First, the court must apply the relevant state ... statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution.

*IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). Pennsylvania law provides that courts may exercise *in personam* jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this

Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b). Therefore, the two-step inquiry is collapsed into a single step. *See IMO Industries*, 155 F.3d at 259.

Personal jurisdiction over a defendant may be characterized as either "general" or "specific" jurisdiction. To meet its burden of proof with respect to jurisdiction, "the plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')." *Provident Nat. Bank*, 819 F.2d at 437 (citations omitted). "[T]he plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction;" indeed, "[t]he nonresident's contacts to the forum must be continuous and substantial." *Id.* (citations omitted).

"Specific personal jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities." *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). *See also Zippo Manufacturing Company v. Zippo Dot Com*, 952 F.Supp. 1119, 1122-23 (W.D. Pa. 1997). When specific jurisdiction is at issue, due process requires that the plaintiff satisfy a two-part test. "First, the plaintiff must show that the defendant has constitutionally sufficient 'minimum contacts' with the forum." *IMO Industries*, 155 F.3d at 259. "Second, for jurisdiction to be exercised the court must determine, in its discretion, that to do so would comport with traditional notions of fair play and substantial justice." *Id*. (quotation marks omitted).[1] "The nature of these contacts must be such that the defendant should be reasonably able to anticipate being haled into court in the forum state." *Provident Nat. Bank v. California Federal Sav. & Loan Ass'n.*, 819 F.2d 434, 437 (3d Cir. 1987) (citation omitted).

When a nonresident defendant allegedly "committed an intentional tort outside the

---

[1] Defendants have not addressed this part of the jurisdictional analysis in their brief, and therefore the Court assumes that the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice.

forum, the unique effects of which caused damage to the plaintiff within the forum," the Court applies the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984) to determine whether the "minimum contacts" prong of specific jurisdiction is met.[2] *IMO Industries*, 155 F.3d at 256, 259.  The Third Circuit has interpreted *Calder* as follows:

> [F]or *Calder* to apply, the plaintiff must allege facts sufficient to meet a three-prong test.  First, the defendant must have committed an intentional tort.  Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort.  Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

*IMO Industries*, 155 F.3d at 256.

Finally, the Court must consider whether it may exercise jurisdiction over each defendant and each claim on an individual and claim-by-claim basis.  *See Keeton v. Hustler Magazine*, 456 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum state must be assessed individually."); *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("Such a determination is claim-specific...").

Discussion

A.   Erika Butler

With respect to Butler, both counts of Plaintiff's Complaint are founded upon the following alleged actions: 1) Butler's alleged delay and incorrect registration of Igor and 2) her alleged involvement in a conspiracy to have Plaintiff's dogs judged unfairly at a dog show. Plaintiff's first Affidavit (*Document No. 14*) contains the following averments of fact regarding Butler's activities:

> In January 2005, I contacted [Butler] at the USRC requesting the registration of my ownership of [Igor].  I mailed to Butler the requisite paperwork for the dog to be registered as I had previously done on two prior occasions.  Butler purposefully delayed the

---

[2] Plaintiff has not contended that jurisdiction is proper based on any other test, and the Court assumes that it is not.  Additionally, no party has addressed the "fair play and substantial justice" prong of the analysis in any meaningful way.

> registration of the dog, feigning excuses of not receiving the correct paperwork, and the intentional issuance of the incorrect registration certificate color. ... Butler and Mueller were aware of the pending sale and that any delay on their part in granting the registration certificate would cause me to lose the sale and I would then derive no further revenue from the stud breeding fees.

Affidavit #1, ¶¶ 4, 5 & 7. Plaintiff's first Affidavit also states that Butler and Mueller conspired with Lecuyer and Koningsburg and instructed them to judge Plaintiff's dogs unfairly and place them last in all categories at a dog show. Affidavit #1 at ¶¶ 11-12. Plaintiff has also submitted four (4) letters that he and his attorney sent to Butler regarding the delayed registration of Igor, as well as a letter sent by Butler to Plaintiff's attorney (in Pennsylvania) regarding the dispute.

    The Court finds that the first and second elements of *Calder* and *IMO Industries* are satisfied. Plaintiff's averments, not all of which are recited herein, are *prima facie* evidence that Butler committed intentional torts, and that Plaintiff felt the brunt of the harm caused by those torts in Pennsylvania, *i.e*, Pennsylvania can be said to be the focal point of the harm. *IMO Industries*, 155 F.3d at 256. *See*, *e.g*., Affidavit #1 at ¶ 14 ("I have lost prospective business in Pennsylvania, and elsewhere, because of Mueller, Butler, Koningsburg and Lecuyer's actions.").

    The Court also finds that Plaintiff's evidence demonstrates that Butler "expressly aimed [her] tortious conduct at [Pennsylvania], such that [Pennsylvania] can be said to be the focal point of the tortious activity." *IMO Industries*, 155 F.3d at 256. As for Count I, which is based upon the delay in the registration of Igor, Plaintiff's averments that Butler targeted Plaintiff's business and was aware of the consequences of her intentional actions are sufficient. *See* Affidavit #1 at ¶¶ 10, 14; *Remick*, 238 F.3d at 260 ("[Defendant's] alleged tortious conduct was expressly aimed at injuring [Plaintiff] in Pennsylvania where he lives and works. That is sufficient to satisfy both *Calder* and *IMO Industries*."). Count II is essentially based upon the same conduct as Count I, with the additional allegation that Butler conspired to have Plaintiff's dogs judged unfairly at a dog show in an effort to damage his business. Viewed in the light most favorable to Plaintiff, the Court also finds that Plaintiff's averments demonstrate that *in personam* jurisdiction is proper over Butler as to Count II. Therefore, the Court will vacate its earlier dismissal of Butler and reinstate her as a defendant.

B.   Andreas Mueller

Plaintiff's first affidavit states that Mueller "was notified of Butler's intentional delay of issuing the registration certificate, and by his implicit acquiescence to the delay and/or official and personal approval of Butler's actions, participated in delaying and interfering with my prospective sale of the dog." Affidavit #1 at ¶ 6. As stated above, the Affidavit also states that "Butler and Mueller were aware of the pending sale and that any delay on their part in granting the registration certificate would cause me to lose the sale and I would then derive no further revenue from the stud breeding fees." *Id*. at ¶ 7. Paragraph 12 of the Affidavit states that "Lecuyer and Koningsburg, improperly acting under instructions from Mueller and Butler, conspired to judge my dogs unfairly and placed them last in all categories." *Id*. at ¶ 11.

As with Butler, the Court finds that the first and second elements of *Calder* and *IMO Industries* are satisfied by the alleged conduct of Mueller. The Court also finds, with respect to both counts of the Complaint, that Plaintiff's allegations of fact suffice to demonstrate that Mueller "expressly aimed his tortious conduct at [Pennsylvania], such that [Pennsylvania] can be said to be the focal point of the tortious activity." *IMO Industries*, 155 F.3d at 256. Therefore, the Court will vacate its earlier dismissal of Mueller and reinstate him as a defendant.

C.   Michael Lecuyer

The allegations at Count II[3] regarding Lecuyer relate to his alleged participation in the conspiracy to damage Plaintiff's business, and comments he made about Plaintiff on the "German Rottweiler Community" online bulletin board. Among other allegations, Plaintiff states in his first Affidavit that:

> Michael Lecuyer ..., in conjunction with Butler and Mueller, conspired to cause the dogs submitted to me at a sanctioned event, to be judged last in all classes. ... Some days after that event, Lecuyer posted derogatory and libelous comments about me on e-mail bulletin boards or web sites hosted or controlled by the Defendants. These derogatory comments written by Lecuyer questioned my sportsmanship, mental stability and sobriety, as well

---

[3]   Lecuyer is not a defendant at Count I.

>as insinuate that I smoke drugs. All the intentionally defaming statements were meant to damage my personal and business reputation within the rottweiler (*sic*) dog breeding community. Specifically, in Pennsylvania, where I live and have my business (*sic*).

Affidavit #1 at ¶¶ 11, 13.

As with Butler and Mueller, the Court finds that the first and second elements of *Calder* and *IMO Industries* are satisfied. The Court also finds that Plaintiff's evidence demonstrates that Lecuyer "expressly aimed his tortious conduct at [Pennsylvania], such that [Pennsylvania] can be said to be the focal point of the tortious activity." *IMO Industries*, 155 F.3d at 256. Therefore, the Court will vacate its earlier dismissal of Lecuyer and reinstate him as a defendant.

### Conclusion

Plaintiff has adduced *uncontradicted* evidence that Butler, Mueller and Lecuyer committed intentional torts, and that their tortious conduct was aimed at and did harm Plaintiff and his business in Pennsylvania. Although Plaintiff's allegations are somewhat vague and conclusory, under the law he "is entitled to have [his] allegations taken as true and all factual disputes drawn in [his] favor." *Miller Yacht Sales*, 384 F.3d at 97. Therefore, the Court finds that Plaintiff has presented *prima facie* evidence that the Court may exercise *in personam* jurisdiction over Butler, Mueller and Lecuyer. Accordingly, Plaintiff's Motion for Reconsideration will be granted and Butler, Mueller and Lecuyer will be reinstated as defendants. An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |  |
|---|---|---|
| **GENE J. FRAGAPANE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | 2:05-cv-1775 |
| | ) | |
| **JAMIE SMITH, ERIC KONINGSBURG** | ) | |
| **and the UNITED STATES ROTTWEILER** | ) | |
| **CLUB,** | ) | |
| **Defendants.** | ) | |

### ORDER OF COURT

AND NOW, this 1st day of June, 2006, in accordance with the foregoing Memorandum Opinion it is hereby ORDERED, ADJUDGED and DECREED that Plaintiff's Motion for Reconsideration (*Document No. 11*) is **GRANTED**.  The Order of Court dismissing defendants Erika Butler, Andreas Mueller and Michael Lecuyer (*Document No. 10*) is **VACATED**, and Erika Butler, Andreas Mueller and Michael Lecuyer are hereby **REINSTATED** as defendants.  In accordance with the foregoing Memorandum Opinion, and the Order of Court filed earlier today, the caption of the case is hereby amended back to its original form, but without Eric Koningsburg, as follows:

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |  |
|---|---|---|
| **GENE J. FRAGAPANE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | 2:05-cv-1775 |
| | ) | |
| **ERIKA BUTLER, ANDREAS MUELLER,** | ) | |
| **MICHAEL LECUYER, JAMIE SMITH and** | ) | |
| **the UNITED STATES ROTTWEILER** | ) | |
| **CLUB,** | ) | |
| **Defendants.** | ) | |

It is further ordered that Erika Butler, Andreas Mueller and Michael Lecuyer shall file an answer to Plaintiff's Complaint on or before **Thursday, June 15, 2006.**

                                                    s/ Terrence F. McVerry
                                                    United States District Court Judge

cc:        Lawrence E. Bolind, Jr., Esquire
            Email: lbolind@bolind.org

            Christian D. Marquis, Esquire
            Email: cdmarquis@mdwcg.com